IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| FREDA J. WESTOVER, | CASE NO. 4:24-CV-02204-SL |
| Plaintiff, | JUDGE SARA LIOI |
| v. | |
| COMMISSIONER OF SOCIAL SECURITY, | MAGISTRATE JUDGE CARMEN E. HENDERSON |
| Defendant, | **REPORT & RECOMMENDATION** |

**I. Introduction**

Plaintiff, Freda J. Westover ("Westover" or "Claimant"), seeks judicial review of the final decision of the Commissioner of Social Security denying her applications for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB"). This matter is before me pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3), and Local Rule 72.2(b). For the reasons below, it is RECOMMENDED that the Court OVERRULE the Commissioner's non-disability determination and that this matter be REMANDED pursuant to Sentence 4 § 405(g).

**II. Procedural History**

On April 20, 2022, Claimant filed applications for DIB and SSI, alleging a disability onset date of October 1, 2021, and claiming she was disabled due to thyroid issues, irritable bowel syndrome, heel spurs, sleep apnea, type 2 diabetes, anxiety, primary hypertension, and chronic obstructive pulmonary disease. (ECF No. 8 at 69, PageID #: 96, Ex. 1A at 1). The applications were denied initially and upon reconsideration, and Claimant requested a hearing before an administrative law judge ("ALJ"). (ECF No. 8 at 150, PageID #: 177, Ex. 8B at 1). On November 28, 2023, an ALJ held a hearing, during which Claimant, represented by attorney Pete Magill, and Deborah Dutton-Lambert, an impartial vocational expert, testified. (ECF No. 8 at 38, PageID #:

65). On December 13, 2023, the ALJ issued a written decision finding Claimant was not disabled. (ECF No. 8 at 19, PageID #: 46). The ALJ's decision became final on November 7, 2024, when the Appeals Council declined further review. (ECF No. 8 at 6, PageID #: 33).

Claimant filed her Complaint to challenge the Commissioner's final decision. (ECF No. 1). The parties have completed briefing in this case. (ECF Nos. 10, 12, 13). Claimant asserts the following assignment of error:

> (1) The ALJ's RFC determination is legally deficient due to his errors in evaluating the persuasiveness of Dr. Haaga's opinion.

(ECF No. 10 at 3, PageID #: 1733).

### III. Background[1]

#### A. Relevant Hearing Testimony

At the hearing held on November 28, 2023, Claimant testified that she saw a counselor at Valley once a week to treat anxiety. (ECF No. 8 at 55, PageID #: 82, TR 50). She testified that she could not be around many people, and that she suffered from panic attacks. (*Id.*). She stated that she had been taking medication to treat her anxiety for two and a half years. (*Id.* at 19, PageID #: 83, TR 51). Claimant testified that she suffered from depression and experienced crying spells at least once a week. (*Id.*).

#### B. Relevant Medical Evidence

Claimant underwent a psychiatric diagnostic evaluation at Valley Counseling on August 12, 2021. (ECF No. 8, PageID 412, Ex. 3F). Claimant appeared "well groomed" with "average (normal)" demeanor. (*Id*. at PageID #: 415, Ex. 3F at 4). Her thought content was described as "normal", with logical thought process, euthymic mood, full affect, cooperative behavior, average

---

[1]Because Claimant's assignment of error concerns only her psychiatric evaluation, this background analysis focuses primarily on her mental health and does not exhaustively review her physical health background.

2

intelligence, mild impairment with her attention/concentration. (*Id*. at PageID #: 415–17, Ex. 3F at 4–6). Claimant was diagnosed with unspecified depressive disorder. (*Id.* at PageID #: 419). On January 10, 2023, claimant underwent a follow up psychiatric diagnostic assessment. (*Id*. at 16F at 18–27). Claimant indicated ongoing issues with anxiety and depression, feeling sad most of the day nearly every day, lack of interest in things that would normally interest her, struggling with concentration and/or focus, racing thoughts, excessive feelings of guilt and worthlessness, falling/staying asleep, mood swings, periods of excessive energy on limited to no sleep, excessive worrying, and thoughts of death. (*Id.* at Ex. 16 at 18). The social worker observed and noted that Claimant appeared angry, irritable, depressed, anxious, had a mild impairment with attention/concentration, and estimated her intelligence as "borderline". (*Id.* at Ex. 16F at 22–4). No other abnormal observations were indicated. Claimant received the following diagnosis: Unspecified Intellectual Disability (Intellectual Developmental Disorder); Persistent Depressive Disorder (Dysthymia); and Tobacco Use Disorder. On January 24, 2023, Claimant underwent a follow-up psychiatric evaluation at Valley Counseling. (*Id.* at 16F at 1–8). Claimant's mood was noted as "irritable", "anxious", and "depressed", and her affect was "labile". No other abnormal findings were indicated. (*Id.* at 16F at 3–5). The nurse practitioner noted that Claimant "meets some criteria for [bipolar]". (*Id*. at 16F at 2). Claimant noted that she had been taking Zoloft and Buspar but felt not that they were helping but that she was getting worse. Claimant's prescription for Zoloft was increased and added prescriptions for Depakote and aripiprazon (Abilify) (as well as discontinue taking Buspar). (*Id.* at 16F at 6–7). Claimant was diagnosed with: Unspecified Intellectual Disability (Intellectual Developmental Disorder); Persistent Depressive Disorder (Dysthymia); Tobacco Use Disorder, Moderate; and Cyclothymic Disorder. (*Id.* at 16F at 7–8). On March 24, 2023, Claimant presented at Valley Counseling for an evaluation of her mediations. (*Id*. at PageID # 1703, Ex. 20F at 1–6). Claimant indicated that her medications were working well

3

and that her mood, anxiety, and sleep are improved. (*Id*. at 20F at 1). No changes were made to Claimant's medications. On June 23, 2023, Claimant presented at Valley Counseling for an evaluation of her mediations. (*Id*. at PageID # 1709, Ex. 20F at 7–13). Claimant indicated her mediations were working well. No changes were made to her medications. She had another follow-up appointment on July 19, 2023, for medication management. (*Id*. at PageID # 1716, Ex. 20F at 14–20). No changes were made to Claimant's medication. (*Id*., Ex. 20F at 16). On September 20, 2023, Claimant had another medication management follow-up. (*Id*. at PageID #: 1723, Ex. 20F at 21–6). Claimant indicated her medications were working well. No changes were made to Claimant's medication. (*Id*., Ex. 20F at 23).

    **C.**        **Opinion Evidence at Issue**

        **1. Dr. Jennifer Haaga, PSY.D**

The Bureau of Disability Determination referred Westover to Dr. Haaga, who accordingly administered a clinical interview and mental status examination on October 31, 2022. (ECF No. 8 at 1468, PageID # 1495, Ex. 14F). Dr. Haaga made the following functional assessments:

- **Claimant's abilities and limitations in understanding, remembering, and carrying out instructions:**

    > [Claimant] described some difficulties with memory and demonstrated some difficulties with memory during the current evaluation. She is capable of comprehending and completing simple routine tasks; however, when tasks become more complex, she may experience difficulties with understanding, remembering and following instructions. She reported problems with learning while in school and had difficulties in the mental status exam. She is likely to be able to learn more repetitive tasks but would struggle with more complicated tasks. Anxiety is likely to interfere with her ability to remember and carry out instructions.

- **Claimant's abilities and limitations in maintaining attention and concentration, and in maintaining persistence and pace, to perform simple tasks and to perform multi-step tasks:**

    > She recalled four digits forward and three digits backward on the digit span task. However, her symptoms of anxiety, depression, and borderline personality disorder will likely cause difficulties in this area or will

> exacerbate those difficulties that she does have. This will make many tasks somewhat more difficult. Specifically, when the demands become too great, Ms. Westover will have some difficulty with attention and concentration. She had some difficulties with staying on topic in the session and stated she would become anxious in work situations which is likely to affect her focus as well as persistence and pace. She is likely to struggle to maintain adequate pace if she is working on more difficult or complicated tasks.

- **Claimant's abilities and limitations in responding appropriately to supervision and to coworkers in a work setting:**

  > Ms. Westover's interaction with this examiner during the current evaluation was adequate, and she described that she has maintained okay relationships with family. She has a history of some interpersonal problems with coworkers. She reported anxiety around others as well as difficulties with irritability if she feels others are mistreating her.

- **Claimant's abilities and limitations to responding appropriately to work pressures in a work setting:**

  > Ms. Westover takes psychiatric prescription medication to help manage symptoms but continues to experience difficulties. She has okay relationships with family. These relationships may not be sufficient to create a positive social support system which would positively influence her ability to withstand stress and pressures of work activities. She is reported she will become anxious and feel down about her situation and limitations. She stated she had started to have anxiety attacks in a job and would likely struggle to successfully respond to significant work pressures. Criticism or difficulties carrying out tasks are likely to cause further issues with increased symptoms. She does not appear to have strong adaptive coping skills.

(*Id.* at PageID #: 1501–02, Ex. 14F at 7–8).

The ALJ found Dr. Haaga's opinion partially persuasive. (ECF No. 8 at 29, PageID #: 56).

## IV. The ALJ's Decision

The ALJ made the following findings relevant to this appeal:

> 3. The claimant has the following severe impairments: chronic obstructive pulmonary disease ("COPD"), neuropathy, obesity, anxiety disorder, borderline intellectual functioning, depressive disorder, and post traumatic-stress disorder ("PTSD") (20 CFR 404.1520(c) and 416.920(c)).
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404,

5

  Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

  5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity ("RFC") to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) with the following additional limitations: The claimant can never climb ladders, ropes, and scaffolds. She can occasionally climb ramps and stairs. She can frequently stoop and occasionally knee, crouch, and crawl. She must avoid concentrated exposure to temperature extremes, humidity, dusts, fumes, gases, odors, and poorly ventilated areas. She cannot work around hazards – such as unprotected heights or dangerous moving machinery. The claimant cannot perform commercial driving. She can perform simple, routine tasks that involve no more than simple work-related decisions. She can have occasional interaction with others that does not involve arbitration, negotiation, or confrontation. She cannot direct the work of others or be responsible for the safety or welfare of others. She cannot perform assembly line work or work that involves strict production quotas. She is limited to handling occasional workplace changes that are gradual and explained in advance.

  10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569a, 416.969, and 416.969a).

  11. The claimant has not been under a disability, as defined in the Social Security Act, from October 1, 2021, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(ECF No. 8 at 24–31, PageID #: 51–8).

## V. Law & Analysis

### A. Standard of Review

The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 320 (6th Cir. 2015); *see also* 42 U.S.C. § 405(g). "[S]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of HHS*, 25 F.3d 284, 286 (6th Cir. 1994)).

6

"After the Appeals Council reviews the ALJ's decision, the determination of the council becomes the final decision of the Secretary and is subject to review by this Court." *Olive v. Comm'r of Soc. Sec.*, No. 3:06 CV 1597, 2007 WL 5403416, at *2 (N.D. Ohio Sept. 19, 2007) (citing *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990); *Mullen v. Bowen*, 800 F.2d 535, 538 (6th Cir. 1986) (en banc)). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, "even if a reviewing court would decide the matter differently." *Id.* (citing 42 U.S.C. § 405(g); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059–60 (6th Cir. 1983)).

### B. Standard for Disability

The Social Security regulations outline a five-step process that the ALJ must use in determining whether a claimant is entitled to supplemental-security income or disability-insurance benefits: (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or combination of impairments; (3) if so, whether that impairment, or combination of impairments, meets or equals any of the listings in 20 C.F.R. § 404, Subpart P, Appendix 1; (4) if not, whether the claimant can perform her past relevant work in light of her residual functional capacity ("RFC"); and (5) if not, whether, based on the claimant's age, education, and work experience, she can perform other work found in the national economy. 20 C.F.R. § 404.1520(a)(4)(i)–(v); *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642–43 (6th Cir. 2006). The claimant bears the ultimate burden of producing sufficient evidence to prove that she is disabled and, thus, entitled to benefits. 20 C.F.R. § 404.1512(a). The claimant has the burden of proof in steps one through four. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). The burden shifts to the Commissioner at step five to establish whether the claimant has the residual functional capacity to perform available work in the national economy. *Id.*

### C. Discussion

"Because Plaintiff takes no issue with the ALJ's other findings, the Court addresses only

the area of disagreement." *Woodard v. Comm'r of Soc. Sec.*, 2023 U.S. Dist. LEXIS 159761, at *6 (N.D. Ohio 2023) (citations omitted). Claimant assigns error to the ALJ on the basis of insufficient analysis of supportability and consistency in regards to Dr. Haaga's opinion.

The Bureau of Disability Determination referred Westover to Dr. Haaga, who accordingly administered a clinical interview and mental status examination on October 31, 2022. (ECF No. 8 at 1468, PageID # 1495, Ex. 14F). Dr. Haaga described Claimant's appearance and behavior, flow of conversation and thought, mood and affect, anxiety, mental content, bodily concerns, sensorium and cognitive functioning, and insight and judgment. Dr. Haaga wrote that Claimant was dressed appropriately, had adequate hygiene, and was cooperative, though she maintained only fleeting eye contact. (*Id.* at 1471, PageID #: 1498). Her speech was 100% understandable, and her thought processes were logical and coherent. (*Id.*) Though she had suffered from depression in the past and now struggled with irritability, Claimant denied suicidal ideations and mania. (*Id.*) Dr. Haaga further reported that Claimant demonstrated no motor manifestations of anxiety, but that Claimant endorsed symptoms of anxiety, posttraumatic stress disorder, agoraphobia, and panic disorder. (*Id.* at 1472, PageID #: 1499). Dr. Haaga found that Claimant's mental content, cognitive functioning, and bodily concerns were not notable, and wrote that Claimant "appears to have fair common-sense reasoning and judgment." (*Id.*)

Dr. Haaga summarized Claimant's mental health complaints as follows:

Ms. Freda Westover is a 52-year-old married woman who is applying for disability due to: anxiety, depression, and my health. She has seen a mental health professional and has been formally diagnosed with depression and anxiety. She socializes with her husband. She said "I would talk to my mother-in-law a lot and she just passed." She currently does not work. She most recently worked in March doing housekeeping at St. Joe's. She said she had been let go. She said she had been at her job since 2019. She said she has done housekeeping in various jobs since the early 2000's. She said "I tried to work when I was young and my son has a lot of issues and he would shit himself and I would get a call to come get him and I couldn't work a job and keep a job until he graduated and I would work here and there when I could." She has some history of interpersonal problems with coworkers. She dropped out of school, where she obtained poor grades. She appears

8

> to be of borderline intelligence. She reported that she has had symptoms of depression for many years and has had symptoms related to past abuse. She also reported anxiety and panic symptoms around other people.

(ECF No. 8 at 1473, PageID #: 1500, Ex. 14F).

Dr. Haaga also provided a functional assessment. Regarding memory, Dr. Haaga opined that Claimant "is capable of comprehending and completing simple routine tasks; however, when tasks become more complex, she may experience difficulties with understanding, remembering and following instructions… [Claimant] is likely to be able to learn more repetitive tasks but would struggle with more complicated tasks. Anxiety is likely to interfere with her ability to remember and carry out instructions." (*Id.* 1474, PageID #: 1501). Regarding attention and concentration, Dr. Haaga opined that Claimant "is likely to struggle to maintain adequate pace if she is working on more difficult or complicated tasks." (*Id.*). Regarding work pressures, Dr. Haaga opined that Claimant "would likely struggle to successfully respond to significant work pressures. Criticism or difficulties carrying out tasks are likely to cause further issues with increased symptoms." (*Id.* at 1475, PageID #: 1502).

The ALJ found Dr. Haaga's opinion partially persuasive and explained:

> Dr. Haaga opined that the claimant is capable of comprehending and completing simple, routine, and repetitive tasks, but will struggle to maintain adequate pace if she is working on more difficult or complicated tasks. She also opined that the claimant would likely struggle to successfully respond to significant work pressures or criticism from supervisors. (Exhibit 14F) These opinions are more limiting than what is supported by the objective medical evidence.

(*Id.* at 229, PageID #: 56).

"Under Social Security regulations, an ALJ weighing medical opinions must consider two factors: supportability and consistency. The supportability analysis examines 'the extent to which the objective medical evidence and supporting explanations presented by a medical source… support his… medical opinion(s).' The consistency analysis looks at how consistent a medical opinion is with evidence from other sources." *Woodard*, 2023 U.S. Dist. Lexis 159761, at *5

9

(citations omitted). The Social Security regulations define these factors:

> (1) Supportability. The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.
>
> (2) Consistency. The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.

20 C.F.R. § 404.1520c(c)(1)-(2); 20 C.F.R. § 416.920c(c)(1)-(2).

"Social Security regulations require ALJs to always explain their consideration of supportability and consistency when assessing a medical opinion. In practice, this means that an ALJ must analyze the medical record in the context of supportability and consistency somewhere in his decision; after he performs that analysis of the medical record once, he need not reproduce it every time he discusses a new medical opinion." *Woodard*, 2023 U.S. Dist. LEXIS 159761, at *7–8. "Although the ALJ is not required to use the 'magic words' of 'supportability' and 'consistency' when describing their reasoning, the ALJ must still provide sufficient reasoning, scaffolded with references in the medical record to support their decision, enough for a subsequent reviewer to trace the lines of their reasoning." *Mertle v. Comm'r of Soc. Sec.*, 2024 U.S. Dist. LEXIS 229225 at *22-23 (N.D. Ohio 2024).

"The administrative adjudicator has the obligation in the first instance to show his or her work, i.e., to explain in detail how the factors actually were applied in each case, to each medical source." *Hardy v. Comm'r of Soc. Sec.*, 554 F. Supp. 3d 900, 909 (E.D. Mich. 2021). "Resorting to boilerplate language to support a finding of unpersuasiveness does not satisfy that obligation." *Id.* Summarization of the medical record including both supportive and contradictory information is not, itself, sufficient to explain the ALJ's reasoning or to "provide sufficient rationale for a reviewing adjudicator or court." *Whalen v. Comm'r of Soc. Sec.*, 2025 U.S. Dist. LEXIS 96552 at

*19 (citing *Hardy*, 554 F. Supp. 3d at 909; *Warren I. v. Comm'r of Soc. Sec.*, 2021 U.S. Dist. LEXIS 42246, 2021 WL 860506, *8 (N.D.N.Y. 2021)).

> The ALJ summarized Claimant's mental health records and symptoms:
>
> At the request of this agency, the claimant underwent a consultative examination with Dr. Jennifer Haaga on October 31, 2022. Dr. Haaga administered a mental status examination and made the following objective observations: The claimant made fleeting eye contact and was tearful during the interview. Dr. Haaga's findings were otherwise within normal limits. The claimant was dressed appropriately, and her hygiene was adequate. The claimant was alert and fully oriented. Her attention and concentration were adequate, and her insight and judgment were fair. (Exhibit 14F) Treatment records from Valley Counseling Services indicate some impairment in mood and occasional impairment in attention and concentration. However, the records also consistently report a logical thought process, normal cognition, a normal fund of knowledge, normal psychomotor activity, an average demeanor, and normal eye contact. (Exhibits 16F18-25 and 20F1-6, 14-26)

(ECF No. 8 at 23, PageID #: 55).

### 1. Supportability

Claimant alleges that the ALJ failed to address the supportability factor and that the ALJ should have considered the findings that Dr. Haaga linked to the limitations she described. (ECF No. 10). The Commissioner argues that the ALJ's decision should be read as a whole, and that the ALJ is not specifically required to mention the word "supportability" in his decision. (ECF No. 12). The Commissioner argues that the ALJ found the opinion unsupported by Dr. Haaga's own examination of the Claimant. (*Id*.). The Court agrees with the Claimant that the ALJ's explanation does not contain the necessary level of specificity.

The factors of supportability and consistency concern different kinds of medical evidence; thus, it is uncomplicated for a reviewing court to determine whether the ALJ has addressed each factor. *Kati M. v. Comm'r of the SSA*, 2025 U.S. Dist. LEXIS 23376 at *21-22 (S.D. Ohio 2025). Supportability concerns the evidence on which providers rely and base their opinions, "including progress notes, test results, statements from the claimant, and opinions from other medical

11

providers." *Id*. "[A] district court cannot uphold an ALJ's decision, even if there 'is enough evidence in the record to support the decision, [where] the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result.'" *White v. Comm'r of Soc. Sec.*, 2021 U.S. Dist. LEXIS 43162 at *58 (N.D. Ohio 2021) (quoting *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011); *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996)). "Likewise, if relevant evidence is not mentioned, the Court cannot discern whether the ALJ discounted or overlooked the evidence." *White*, 2021 U.S. Dist. LEXIS 43162 at *58 (citing *Shrader v. Astrue*, 2012 U.S. Dist. Lexis 157595 (E.D. Mich. 2012)).

The Commissioner is correct that the ALJ need not explicitly use the word "supportability" in his explanation, yet the ALJ must provide an explanation. The ALJ recited several of Dr. Haaga's opinions from her examination of Westover[2], before concluding that Dr. Haaga's conclusion was "more limiting than what is supported by the objective medical evidence." (ECF No. 8 at 29, PageID #: 56). This brief statement is not an explanation of supportability. The ALJ failed to specify what he meant by "objective medical evidence," and the Court is unable to trace the lines of his reasoning.

Even assuming that "objective medical evidence" referred to Dr. Haaga's own factual findings, the ALJ's explanation was insufficient. Previously in his decision, the ALJ stated that:

> At the request of this agency, the claimant underwent a consultative examination with Dr. Jennifer Haaga on October 31, 2022. Dr. Haaga administered a mental status examination and made the following objective observations: The claimant made fleeting eye contact and was tearful during the interview. Dr. Haaga's findings were otherwise within normal limits. The claimant was dressed appropriately, and her hygiene was adequate. The claimant was alert and fully oriented. Her attention and concentration were adequate, and her insight and judgment were fair. (Exhibit 14F)

---

[2] Specifically, the ALJ stated: "Dr. Haaga opined that the claimant is capable of comprehending and completing simple, routine, and repetitive tasks, but will struggle to maintain adequate pace if she is working on more difficult or complicated tasks. She also opined that the claimant would likely struggle to successfully respond to significant work pressures or criticism from supervisors. (Exhibit 14F)[.]"

12

(ECF No. 8, PageID #: 55, Tr. at 23). Although the ALJ referred here to two adverse findings from Dr. Haaga's examination and noted otherwise normal results, he failed to explain why Dr. Haaga's findings do not support her opinion. Dr. Haaga, too, acknowledged Claimant's normal findings and did not preclude Claimant from all mental-related work activities. Instead, Dr. Haaga noted several additional adverse findings and explained how such findings limited Claimant's mental abilities. For example, Dr. Haaga noted Claimant's memory difficulties on examination, historical learning difficulties, and anxiety and opined that such difficulties would limit Claimant's ability to comprehend tasks and to remember and carry out instructions. Dr. Haaga also noted Claimant's digit span testing, difficulties maintaining a topic of conversation during the session, and her symptoms of anxiety, depression, and borderline personality disorder and opined that these difficulties would affect her focus as well as persistence and pace. Dr. Haaga also noted that Claimant would have a difficult time with criticism and that her anxiety and difficulties carrying out tasks would limit her abilities responding appropriated to work pressures. Dr. Haaga also included adverse findings of hyper-talkativeness, occasional tangential thoughts, depressed mood, congruent affect, history of abuse, and symptoms of posttraumatic stress disorder, agoraphobia, and panic disorder. This evidence could support Dr. Haaga's opinion regarding Westover's limitations, but the ALJ did not address these adverse findings. *See Reinartz v. Comm'r of Soc. Sec.*, 795 Fed. Appx. 448, 449 (6th Cir. 2020) (citing 20 C.F.R. § 404.1545(a)(1)) ("An ALJ must consider 'all the relevant evidence in the record'—medical and non-medical alike—to determine a claimant's work capacity.").

Although the ALJ states that Claimant's normal findings do not support a finding that she is precluded from *all* mental-related work, the ALJ does not explain how Dr. Haaga's opinion was overly limiting given her adverse findings. *See William G.*, 2022 U.S. Dist. LEXIS 165614 at *21 ("The Commissioner fails to explain how the ALJ's citation of [the medical expert's] treatment

13

notes… undercuts the supportability of [the expert] opinion."). The ALJ could certainly have found that this evidence nonetheless did not support Dr. Haaga's opinion, but because the ALJ never discussed these findings, the Court cannot discern whether the ALJ discounted or ignored the evidence. Thus, the ALJ did not "build an accurate and logical bridge between the evidence and the result."[3]

The Commissioner cites *McCarty v. Comm'r of Soc. Sec.*, No. 4:24-CV-00451, 2024 WL 4695900, at *8 (N.D. Ohio Nov. 6, 2024) to argue that the ALJ's opinion analyzed supportability and consistency when "read as a whole and with common sense." (ECF No. 12 at 6, PageID #: 1757). In *McCarty*, although the ALJ did not expressly use the word supportability, he analyzed the medical expert's findings and compared them with the expert opinion, explaining "although the ALJ's decision did not invoke the term 'supportability,' it cited objective medical evidence—X-ray imaging and examination findings—that supported the opined limitation to light work with postural restrictions. Thus, the ALJ implicitly found the prior administrative medical findings to be supported." *Id.* at 22. Though an ALJ may implicitly discuss supportability, a discussion must still be had. In *McCarty*, the ALJ referred to specific medical findings and compared them to opined limitations. The ALJ in *McCarty* explained "specifically, X-ray findings of advanced degeneration at L4-L5 and L5-S1 and her limited bilateral lower extremity sensation on monofilament testing is consistent to the finding that [Ms. McCarty] is limited to light exertional work." *Id.* at 20. Here, the ALJ did not compare or otherwise link any evidence to the limitations that Dr. Haaga proposed and referred only to "objective medical evidence." Because it is unclear what the ALJ meant by objective medical evidence, the Court cannot follow an analysis of

---

[3] If the ALJ intended "objective medical evidence" to refer to evidence from the record as a whole, and not only the evidence that Dr. Haaga used to support her opinion, then the ALJ confused supportability with consistency. *See William G. v. Comm'r of Soc. Sec.*, 2022 U.S. Dist. LEXIS 165614 at *21 (S.D. Ohio 2022) ("An argument that [the medical expert's] opinion is incompatible with the record as a whole goes to consistency, not supportability.").

supportability even when reading the ALJ's opinion as a whole.

### 2. Consistency

Claimant alleges that the ALJ's evaluation of the opinion's consistency is erroneous because the ALJ provided no evidentiary discussion or other support for his statement that Dr. Haaga's opinion was overly limiting. The Commissioner points to examinations in the record with unremarkable health findings, but Claimant replies that the ALJ did not make these comparisons when explaining his assignment of weight and in fact never explained instances of inconsistency. The Court agrees with the Claimant.

The consistency factor requires an ALJ to consider the degree to which a medical opinion is consistent with evidence from other medical and nonmedical sources. 20 C.F.R. § 404.1520c(c)(2)). "ALJs must provide a 'minimum level of articulation . . . to provide sufficient rationale for a reviewing adjudicator or court.'" *Farrah W. v. Comm'r of the SSA*, 2024 U.S. Dist. LEXIS 23199 at *23 (S.D. Ohio 2024) (holding that an ALJ could not simply rely on "the record" generally to explain why he was substantially persuaded by the medical consultants' opinions.). "A rule that requires courts and claimants to glean the ALJ's explanation of the supportability and consistency factors from unspecified parts of his decision does not satisfy the articulation requirement." *Id.* at 24.

Claimant analogizes this case to this Court's previous decision in *Whalen,* 2025 U.S. Dist. LEXIS 96552. (ECF No. 13 at 2, PageID #: 1764). In *Whalen*, Dr. Seo, a medical expert, opined that the claimant's impairments precluded her from any and all work activity. 2025 U.S. Dist. LEXIS 96552 at *45. The ALJ wrote that this opinion was disproportionate to the examination findings and treatment received, and that "[t]he evidence of record generally does not support the alleged loss of functioning." *Id.* at *45-46. This Court held that "[t]hese general statements alone do not contain the level of specificity desired by the regulations." *Id.* at *46. Nor could the Court

15

trace the path of the ALJ's reasoning that Dr. Seo's opinion was inconsistent with the totality of the evidence, due to this lack of specificity.

Similarly, the ALJ here wrote that the "objective medical evidence" did not support the limitations described by Dr. Haaga. To analyze inconsistency, the ALJ should have explained specific instances of inconsistency in the record, as opposed to a general statement concerning the record as a whole. Given the unspecific, vague nature of the ALJ's statement, this Court is unable to trace the ALJs' paths of reasoning.

A review of the decision as a whole does not shed light on the ALJ's consistency analysis of Dr. Haaga's opinion. In the ALJ's discussion of Claimant's mental health records, he states that "Treatment records from Valley Counseling Services indicate some impairment in mood and occasional impairment in attention and concentration. However, the records also consistently report a logical thought process, normal cognition, a normal fund of knowledge, normal psychomotor activity, an average demeanor, and normal eye contact. (Exhibits 16F18-25 and 20F1-6, 14-26)" (ECF No. 8, PageID #: 55, Tr. at 23). Although the ALJ cited some evidence from Valley Counseling Services, he fails to explain how this evidence undermines Dr. Haaga's opinion. Instead, the ALJ relied on these records to conclude that "the objective medical evidence does not support a finding that the claimant would be precluded from all mental-related work activities." (*Id.*). That said, Dr. Haaga did not prelude Claimant from "all mental-related work activities". Thus, the articulation requirement is not satisfied by the ALJ's reference to Valley Counseling Services records. The ALJ did not compare this evidence to Dr. Haaga's findings or opined limitations. Nor did the ALJ explain how this evidence impacted his reasoning when evaluating Dr. Haaga's opinions. The ALJ offered no explanation at all. *See Farrah W.*, 2024 U.S. Dist. LEXIS 23199 at *23 ("The ALJ did not actually compare [the expert] opinion to Plaintiff's treatment history. Nor did he compare it to other evidence from other medical sources and

16

nonmedical sources. He therefore did not consider the consistency factor."); *see also Creter v. Saul*, 2021 U.S. Dist. LEXIS 40474 at *30 (N.D. Ohio 2021) (Finding the ALJ did not err because he "specifically cited treatment records he felt were inconsistent with [the expert opinion], and ***explained why***.")(Emphasis added). This Court cannot discern how the ALJ determined that "objective medical evidence" is inconsistent with Dr. Haaga's opinions. Because the Court cannot adequately trace and follow the ALJ's reasoning, the ALJ did not properly evaluate the consistency factor.

### 3. Conclusion

The ALJ did not properly assess Dr. Haaga's opinion, because he did not provide the level of analysis and explanation required. Although the ALJ was not required to use the words "consistency" and "supportability," he had to clearly articulate how he considered those factors, with reference to specific evidence and a discernible rationale. The ALJ neither adequately explained why Dr. Haaga's opinion was unsupported by her own findings nor identified which aspects of the record were inconsistent to her conclusions. Accordingly, the ALJ's failure to properly analyze and articulate the supportability and consistency of Dr. Haaga's opinion constitutes reversible error.

Remand is appropriate when the ALJ's decision is unsupported by substantial evidence or when the ALJ failed to follow the Administration's own regulations, and that shortcoming prejudiced the plaintiff on the merits or deprived the plaintiff of a substantial right. *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007); *Cole v. Astrue*, 661 F.3d 931, 939-40 (6th Cir. 2011) (An "ALJ's failure to follow agency rules and regulations 'denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record.'") (quoting *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399 (6th Cir. 2009)). A vague reference to "objective medical evidence" falls short of the regulatory requirement. Without an accurate and

logical bridge between the medical evidence and the ALJ's conclusion, the Court cannot meaningfully review the ALJ's assessment of the opinion, and thus the error is not harmless. *Todd v. Comm'r of Soc. Sec.*, No. 3:20-CV-1374, 2021 WL 2535580, at *8 (N.D. Ohio June 3, 2021), *report and recommendation adopted*, No. 3:20 CV 1374, 2021 WL 2530846 (N.D. Ohio June 21, 2021) (citing *Blakley*, 581 F.3d at 409). Accordingly, remand is necessary.

## VI. Recommendation

Based on the above, it is RECOMMENDED that the Court OVERRULE the Commissioner's non-disability determination and that this matter be REMANDED pursuant to Sentence 4 § 405(g).

Dated: September 9, 2025

s/ *Carmen E. Henderson*<br>
CARMEN E. HENDERSON<br>
U.S. MAGISTRATE JUDGE

---

### OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within 14 days after being served with a copy of this document. Failure to file objections within the specified time may forfeit the right to appeal the District Court's order. *See Berkshire v. Beauvais*, 928 F.3d 520, 530-31 (6th Cir. 2019).